UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRIAN KLEEBERG, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 3:22-cv-30084-KAR |
| THE BERKSHIRE GAS CO., et al. | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS
(Dkt. No. 5)

ROBERTSON, U.S.M.J.

Brian Kleeberg ("Plaintiff") has sued his former employer, The Berkshire Gas Co. ("Berkshire"), and its parent company, Avangrid ("Avangrid," and, collectively with Berkshire, "Defendants"), pursuant to the Massachusetts Whistleblower Protection Act, Mass. Gen. Laws ch. 149, § 185 (Count II). At issue is Defendants' partial motion to dismiss (Dkt. No. 5), by which Defendants seek to dismiss Plaintiff's additional common law claims for wrongful discharge in violation of public policy (Count I) and breach of contract and violation of the duty of good faith and fair dealing (Count III). The parties have consented to this court's jurisdiction (Dkt. No. 11). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.

1

I.      **BACKGROUND**[1]

Plaintiff worked as a utility worker for Berkshire for more than fifteen years with an unblemished disciplinary record before Berkshire terminated his employment on June 1, 2021 (Dkt. No. 1-1 at ¶¶ 3, 67, 72). For approximately one year before he was fired, Plaintiff frequently made objections to his supervisors regarding what he reasonably believed to be serious issues of risks to public safety by Defendants, including an alleged shortage of necessary equipment, a failure to properly follow industry regulations, and a lack of training at Berkshire's liquified natural gas ("LNG") facility in Whately, Massachusetts (*id.* at ¶¶ 6, 8-9, 11-12, 19-23, 28, 34-38, 41-44, 58-60, 62-63). These complaints included the following:

- On September 23, 2020, Plaintiff complained to Michael Wendling, Berkshire's Distribution Supervisor, that there was a shortage of the necessary equipment to safely execute his duties and responsibilities as Distribution Leader;

- In October of 2020, Plaintiff reported to Wendling that the "tapping equipment" used by Berkshire was unsafe and not in proper working order;

- In November of 2020, Plaintiff reported and disclosed to Joseph Maselli, Berkshire's Manager of Operations, that there was a lack of training for employees at Berkshire's LNG facility;

- Sometime thereafter, Plaintiff contacted Berkshire's Human Resources department to report his concerns regarding the lack of training;

- On November 19, 2020, Plaintiff participated in a conference call with Lori Palmer, Berkshire's Human Resources Director, and others in which he raised numerous issues surrounding the lack of training and unsafe working conditions;

- Plaintiff contacted Frank Mahar, Berkshire's Lead Service Supervisor, and told him that he and other employees needed more training;

- In November or December of 2020, Plaintiff spoke with a Human Resources employee to discuss his concerns and give examples of public safety concerns;

---

[1] For purposes of ruling on this motion, the court accepts all facts alleged in Plaintiff's complaint as true and draws all reasonable inferences in Plaintiff's favor. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).

- On December 28, 2020, Plaintiff complained to Gabe Josephs, Berkshire's LNG Supervisor, that he wasn't receiving support and that his complaints of public safety were not being addressed;

- On January 11, 2021, Plaintiff complained regarding a lack of communication and unresponsiveness from his supervisors;

- On January 13, 2021, Plaintiff emailed Human Resources to complain about a lack of training for Berkshire employees;

- On January 21, 2021, Plaintiff complained to Al Whelan, Berkshire's Lead Distribution Supervisor, about faulty tools and equipment and complained that there were no resources for ethics and safety in place for employees;

- On or about February 4, 2021, Plaintiff objected to Maselli about using red-tagged tapping equipment;

- On March 2, 2021, Plaintiff raised objections and concerns about a lack of communication and resources, as well as faulty tools in a survey he completed;

- On March 2, 2021, Plaintiff met with Sharon Cogan, a Human Recourse employee, Josephs, and Maselli regarding Department of Public Utility ("DPU") violations;

Plaintiff was subjected to a hostile work environment in retaliation for these complaints, including being harassed by Maselli (*id*. at ¶¶ 13, 18, 26, 34). Due to the stress and anxiety Plaintiff was experiencing at work, he filed for leave pursuant to the Family Medical Leave Act, which was approved for six months on April 13, 2021 (*id*. at ¶¶ 45-46, 49).

On May 17, 2021, Plaintiff texted Josephs to discuss the work assignment schedule for the day (*id*. at ¶ 51). Josephs responded with a picture of the schedule, which did not reflect that a co-worker, Jeff, had called out (*id*. at ¶¶ 51, 52, 55). Sometime later, Josephs called Plaintiff inquiring why he was not doing an emergency Dig Safe assignment (*id*. at ¶ 53). Plaintiff advised Josephs that he was doing the work orders as the schedule indicated, whereupon Josephs advised Plaintiff that Jeff had called out and that Plaintiff needed to drive one of Berkshire's vehicles, the Equinox, to the LNG plant (*id*. at ¶¶ 53-55). Plaintiff stated to Josephs that the

Equinox had recently been taken out of service for issues with the brakes and should not be operated, but nevertheless drove it to the LNG plant (*id*. at ¶ 56). Upon arriving, Josephs berated Plaintiff for failing to complete the Dig Safe project, although it had been completed shortly after Plaintiff was told that Jeff was out (*id*. at ¶ 57).

Later that same day, Plaintiff again raised his concerns to Josephs regarding the continuous risks to public safety, the lack of training, faulty and defective equipment; and safety violations (*id*. at ¶ 58). Plaintiff told Josephs that he was "done doing jobs without the proper tools and training and he wasn't going to turn a blind eye on safety anymore just to keep Joe (Maselli) from head hunting us," and that he was "done covering things up and wouldn't be afraid to tell the president of the company" (*id*. at ¶¶ 59-60). That night, Plaintiff texted Josephs to reiterate his frustration with Berkshire's refusal to address safety issues (*id*. at ¶ 63). The following morning, Plaintiff sent a group text to Josephs and Whelan regarding a meeting to work on fixing some of the safety and communication issues (*id*. at ¶¶ 38, 63). Plaintiff did not get a response (id. at ¶ 63).

On May 19, 2021, after working part of the day, Plaintiff was contacted by Josephs and Whelan and told to go home due to his alleged insubordination on May 17, 2021 (*id*. at ¶ 64). On June 1, 2021, Plaintiff received a termination letter in which he was accused of violating the Avangrid Code of Business Conduct by engaging in aggressive behavior and insubordination on May 17, 2021 (*id*. at ¶ 68).

## II.   LEGAL STANDARD

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state

a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard invites a two-step pavane." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 45 (1st Cir. 2012)). First, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id*. (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, the court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Morales-Cruz*, 676 F.3d at 224 (internal quotation marks omitted)). In ruling on a motion to dismiss, the court may consider "only the complaint, documents attached to it, and documents expressly incorporated into it." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014).

### III. DISCUSSION

The Massachusetts Whistleblower Act prohibits employers, including public utility employers, from, *inter alia*, taking any retaliatory action against an employee because the employee "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment." Mass. Gen. Laws ch. 149, § 185(b)(3). The statute creates a private right of action by which prevailing plaintiffs are entitled to all remedies available in common law tort actions, as well as: (1) preliminary and permanent injunctive relief; (2) reinstatement to the same position held before the retaliatory action, or to an equivalent position; (3) reinstatement of full fringe benefits and seniority rights; (4) triple damages; and (5) attorneys' fees and costs. Mass.

Gen. Laws ch. 149, § 185(d).  The statute includes a waiver provision, which provides that "institution of a private action in accordance with subsection (d) shall be deemed a waiver by the plaintiff of the rights and remedies available to him, for the actions of the employer or public utility employer, under any other contract, collective bargaining agreement, state law, rule, or regulation, or under the common law."  Mass. Gen. Laws ch. 149, § 185(f).

Defendants argue that the statutory waiver provision applies to preclude Plaintiff from bringing parallel claims for wrongful discharge in violation of public policy and breach of contract and violation of the duty of good faith and fair dealing.  Defendants note that "[t]he only limitation on the wavier provision is that it extends only 'to related claims seeking damages essentially for the same conduct … that constituted the core retaliation for the whistleblowing.'" *McGinn v. Exec. Office of Energy & Envtl. Affairs*, 496 F. Supp. 3d 541, 552 (D. Mass. 2020) (quoting *Oberg v. City of Taunton*, 972 F. Supp. 2d 174, 191 (D. Mass. 2013)).  According to Defendants, all the counts of Plaintiff's complaint are based on the same underlying conduct, which is demonstrated by the fact that Plaintiff incorporates all the factual allegations of his complaint into all three counts.  Moreover, in the introduction to his complaint, Plaintiff describes the common law claims as "related" to the claim brought pursuant to the Whistleblower Protection Act and all three as "brought as a result of the Defendants [sic] actions in wrongfully terminating the Plaintiff and retaliating against the Plaintiff" (Dkt. 1-1 at 1).

Plaintiff counters by arguing that his termination in violation of public policy and breach of contract claims "are rooted in a separate and distinct set of factual allegations than his Whistleblower Act claim" (Dkt. No. 17 at 4).  Specifically, Plaintiff points out that the language of the termination letter makes it "abundantly clear" that Plaintiff's employment was terminated solely for his alleged behavior on May 17, 2021, while he separately suffered other "adverse

employment actions and emotional distress damages … as a result of his Whistleblower activity (*id*. at 4, 7).[2]

This contention is contradicted by Plaintiff's complaint, which is the operative document. In the factual allegations of Plaintiff's complaint, he alleges that the termination of his employment was "entirely based upon his long standing and ongoing vocal complaints and objections to his supervisors regarding Berkshire Gas and Avangrid's continuous risks to public safety, their lack of training, faulty and/or defective equipment and safety violations," and that "[t]he temporal proximity of the decision to terminate [Plaintiff] is directly connected to [sic] timing of his objections and complaints made to his supervisors regarding safety concerns and the risk to public safety" (*id*. at ¶¶ 74, 76). Moreover, in the Whistleblower Act count of Plaintiff's complaint, he states, "Plaintiff has been retaliated against for reporting and objecting to and/or refusing to participate in the Defendants' illegal and/or unethical actions and as a result of raising these issues the Plaintiff was subsequently subjected to retaliation, disparate treatment, a hostile work environment, retaliatory acts affecting his employment, *and ultimately termination resulting in the loss of his income and other benefits he would otherwise have received from his employment*" (Dkt. No. 1-1 at ¶ 91) (emphasis added). Finally, in his prayer for relief, Plaintiff requests reinstatement to his previous position (Dkt. No. 1-1 at 11). Thus,

---

[2] To the extent Plaintiff is arguing that his common law claims are not preempted by the Whistleblower Act because Defendants purported to rely exclusively on his conduct on May 17, 2021, as their reason for terminating his employment and the complaint alleges adverse employment actions in addition to the termination of his employment, the argument also fails. The complaint plainly alleges in Count II – the claim under the Whistleblower Act – that Plaintiff suffered a variety of adverse employment actions leading up the termination of his employment, all because of his reporting of, or objecting to, safety violations (Dkt. No. 1-1, ¶ 91). Thus, the whistleblower claims, and the common law claims of wrongful termination in violation of violation of public policy (Count I) and breach of the implied contractual covenant of good faith and fair dealing resulting in interference with his employment, share a common factual basis and are preempted. *See McGinn*, 496 F. Supp. 3d at 552.

Plaintiff has plainly alleged that his employment was terminated in retaliation for his whistleblower activity and is seeking damages for the termination of his employment through his Whistleblower Act claim. Accordingly, pursuant to Mass. Gen. Laws ch. 149, § 185(f), Plaintiff has waived his right to bring related common claims for termination in violation of public policy and breach of contract and of the implied covenant of good faith and fair dealing in connection with the termination of his employment. *See Mailloux v. Town of Littleton*, 473 F. Supp. 2d 177, 185 (D. Mass. 2007) (dismissing breach of contract and promissory estoppel claims pursuant to the waiver provision of the Massachusetts Whistleblower Act).

Plaintiff makes the additional argument that his breach of contract claim is based on more than the termination of his employment where the complaint alleges that he had an enforceable employment contract and that Defendants breached the terms of the contract regarding safety standards, reporting requirements, record keeping, and quality assurance. The court agrees with Plaintiff on this point. To the extent that Plaintiff's breach of contract claim is based on allegations that Defendants failed to comply with their contractual obligations separate and apart from the termination of Plaintiff's employment, Plaintiff is not "'seeking damages essentially for the same conduct … that constituted the core retaliation for the whistleblowing.'" *McGinn*, 496 F. Supp. 3d at 552 (quoting *Oberg*, 972 F. Supp. 2d at 191). Thus, Plaintiff did not waive his right to bring this portion of the breach of contract claim by instituting his Whistleblower Act claim against Defendants.

## IV. CONCLUSION

For the above-stated reasons, Defendants' partial motion to dismiss (Dkt. No. 5) is GRANTED in part and DENIED in part. Count I of Plaintiff's complaint for wrongful termination in violation of public policy is dismissed and Count III for breach of contract and the

implied covenant of good faith and fair dealing is dismissed to the extent it is premised on the termination of Plaintiff's employment but survives Defendants' motion to the extent it is based on alleged independent breaches of the terms of Plaintiff's employment contract regarding safety standards, reporting requirements, record keeping, and quality assurance.

      It is so ordered.

Dated: December 6, 2022                              /s/ Katherine A. Robertson
                                                                                           KATHERINE A. ROBERTSON
                                                                                            United States Magistrate Judge