UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRIAN KLEEBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:22-cv-30084-KAR |
| | ) | |
| THE BERKSHIRE GAS CO., et al. | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 31)

ROBERTSON, U.S.M.J.

Brian Kleeberg ("Plaintiff") has sued his former employer, The Berkshire Gas Co.

("Berkshire"), and its parent company, Avangrid ("Avangrid," and, collectively with Berkshire,

"Defendants"), pursuant to the Massachusetts Whistleblower Protection Act ("WPA"), Mass.

Gen. Laws ch. 149, § 185, (Count II) and for common law breach of contract (Count III).  The

court previously dismissed Plaintiff's claim for wrongful discharge in violation of public policy

(Count I) and his claim for violation of the implied covenant of good faith and fair dealing

insofar as that claim was based on the termination of his employment (included in Count III).

The court declined to dismiss so much of Plaintiff's breach of contract claim as was based on

Defendants' alleged failure to comply with contractual undertakings as to safety standards,

reporting requirements, record keeping, and quality assurance (Count III) (Dkt. No. 27).

After the court issued its decision on Defendants' initial motion to dismiss, Defendants

moved for a more definite statement, requesting that Plaintiff be required to identify the contract

on which he based his claim that Defendants had violated their contractual duties (Dkt. No. 28 at

1).  The court granted Defendants' motion for a more definite statement in the absence of

opposition (Dkt. No. 29).  In response, Plaintiff stated that he based his breach of contract claims

on the April 1, 2019, collective bargaining agreement ("CBA") between Defendants and the

United Steelworkers Union 12325 ("the Union") (Dkt. 30 at 1).

Now before the court is Defendants' second Motion to Dismiss, which seeks dismissal of

Count II and so much of Count III as remains pending on grounds of preemption (Dkt. No. 31 at

1-2).  For the following reasons, Defendants' motion to dismiss is GRANTED as to Count III

and DENIED as to Count II, which, as the sole remaining count, and one that arises exclusively

under state law, will be remanded to state court.

## I.    BACKGROUND[1]

The court repeats the factual background drawn from Plaintiff's complaint in its

Memorandum and Order on Defendants' initial motion to dismiss, as follows:

> Plaintiff worked as a utility worker for Berkshire for more than fifteen years with
> an unblemished disciplinary record before Berkshire terminated his employment
> on June 1, 2021 (Dkt. 1-1 at ¶¶ 3, 67, 72).  For approximately one year before he
> was fired, Plaintiff frequently made objections to his supervisors regarding what
> he reasonably believed to be serious issues of risks to public safety by
> Defendants, including an alleged shortage of necessary equipment, a failure to
> properly follow industry regulations, and a lack of training at Berkshire's liquified
> natural gas ("LNG") facility in Whately, Massachusetts (*id*. at ¶¶ 6, 8-9, 11-12,
> 19-23, 28, 34-38, 41-44, 58-60, 62-63).  These complaints included the following:
>
> - On September 23, 2020, Plaintiff complained to Michael Wendling, Berkshire's
>   Distribution Supervisor, that there was a shortage of the necessary equipment to
>   safely execute his duties and responsibilities as Distribution Leader;

---

[1] For purposes of ruling on this motion, the court accepts all facts alleged in Plaintiff's complaint
as true and draws all reasonable inferences in Plaintiff's favor.  *See In re Fin. Oversight & Mgmt.
Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640
F.3d 1, 7 (1st Cir. 2011)).

- In October of 2020, Plaintiff reported to Wendling that the "tapping equipment" used by Berkshire was unsafe and not in proper working order;

- In November of 2020, Plaintiff reported and disclosed to Joseph Maselli, Berkshire's Manager of Operations, that there was a lack of training for employees at Berkshire's LNG facility;

- Sometime thereafter, Plaintiff contacted Berkshire's Human Resources department to report his concerns regarding the lack of training;

- On November 19, 2020, Plaintiff participated in a conference call with Lori Palmer, Berkshire's Human Resources Director, and others in which he raised numerous issues surrounding the lack of training and unsafe working conditions;

- Plaintiff contacted Frank Mahar, Berkshire's Lead Service Supervisor, and told him that he and other employees needed more training;

- In November or December of 2020, Plaintiff spoke with a Human Resources employee to discuss his concerns and give examples of public safety concerns;

- On December 28, 2020, Plaintiff complained to Gabe Josephs, Berkshire's LNG Supervisor, that he wasn't receiving support and that his complaints of public safety were not being addressed;

- On January 11, 2021, Plaintiff complained regarding a lack of communication and unresponsiveness from his supervisors;

- On January 13, 2021, Plaintiff emailed Human Resources to complain about a lack of training for Berkshire employees;

- On January 21, 2021, Plaintiff complained to Al Whelan, Berkshire's Lead Distribution Supervisor, about faulty tools and equipment and complained that there were no resources for ethics and safety in place for employees;

- On or about February 4, 2021, Plaintiff objected to Maselli about using red-tagged tapping equipment;

- On March 2, 2021, Plaintiff raised objections and concerns about a lack of communication and resources, as well as faulty tools in a survey he completed;

- On March 2, 2021, Plaintiff met with Sharon Cogan, a Human Recourse employee, Josephs, and Maselli regarding Department of Public Utility ("DPU") violations.

3

Plaintiff was subjected to a hostile work environment in retaliation for these
complaints, including being harassed by Maselli (*id*. at ¶¶ 13, 18, 26, 34). Due to
the stress and anxiety Plaintiff was experiencing at work, he filed for leave
pursuant to the Family Medical Leave Act, which was approved for six months on
April 13, 2021 (*id*. at ¶¶ 45-46, 49).

On May 17, 2021, Plaintiff texted Josephs to discuss the work assignment
schedule for the day (*id*. at ¶ 51). Josephs responded with a picture of the
schedule, which did not reflect that a co-worker, Jeff, had called out and was not
at work that day (*id*. at ¶¶ 51, 52, 55). Sometime later, Josephs called Plaintiff
inquiring why he was not doing an emergency Dig Safe assignment (*id*. at ¶ 53).
Plaintiff advised Josephs that he was doing the work orders as the schedule
indicated, whereupon Josephs advised Plaintiff that Jeff had called out and that
Plaintiff needed to drive one of Berkshire's vehicles, the Equinox, to the LNG
plant (*id*. at ¶¶ 53-55). Plaintiff stated to Josephs that the Equinox had recently
been taken out of service for issues with the brakes and should not be operated,
but nevertheless drove it to the LNG plant (*id*. at ¶ 56). Upon arriving, Josephs
berated Plaintiff for failing to complete the Dig Safe project, although it had been
completed shortly after Plaintiff was told that Jeff was out (*id*. at ¶ 57).

Later that same day, Plaintiff again raised his concerns to Josephs regarding the
continuous risks to public safety, the lack of training, faulty and defective
equipment; and safety violations (*id*. at ¶ 58). Plaintiff told Josephs that he was
"done doing jobs without the proper tools and training and he wasn't going to turn
a blind eye on safety anymore just to keep Joe (Maselli) from head hunting us,"
and that he was "done covering things up and wouldn't be afraid to tell the
president of the company" (*id*. at ¶¶ 59-60). That night, Plaintiff texted Josephs to
reiterate his frustration with Berkshire's refusal to address safety issues (*id*. at ¶
63). The following morning, Plaintiff sent a group text to Josephs and Whelan
regarding a meeting to work on fixing some of the safety and communication
issues (*id*. at ¶¶ 38, 63). Plaintiff did not get a response (*id.* at ¶ 63).

On May 19, 2021, after working part of the day, Plaintiff was contacted by
Josephs and Whelan and told to go home due to his alleged insubordination on
May 17, 2021 (*id*. at ¶ 64). On June 1, 2021, Plaintiff received a termination
letter in which he was accused of violating the Avangrid Code of Business
Conduct by engaging in aggressive behavior and insubordination on May 17,
2021 (*id*. at ¶ 68).

*Kleeberg v. The Berkshire Gas Co.*, Civil No. 3:22-cv-30084-KAR, 2022 WL 17466280, at *1-3

(D. Mass. Dec. 6, 2022).

In Plaintiff's addendum to his original complaint, he alleges that the CBA "between Plaintiff, the United Steelworkers Union 12325, Berkshire Gas Company and Avangrid" was "an enforceable employment contract with defendant" and included "safety standards, reporting requirements, record keeping and quality assurance" (Dkt. No. 30 at 1).  He asserts that he brought his grievance to Berkshire, that Defendants failed to address it, and that he "exhausted his remedies provided through the [CBA's] grievance and arbitration provisions" (Dkt. No. 30 at 1).

## II.     LEGAL STANDARD

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard invites a two-step pavane."  *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 45 (1st Cir. 2012)).  First, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  *Id*. (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id*. (quoting *Morales-Cruz*, 676 F.3d at 224 (internal quotation marks omitted)).  In ruling on a motion to dismiss, the court may consider "only the complaint, documents attached to it, and documents expressly incorporated into it."  *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014).

III.     **DISCUSSION**

Defendants move to dismiss Count II and the remainder of Count III on the ground of

preemption under Section 301 of the Labor Management Relations Act, 29 U.S.C § 185

("LMRA") (Dkt. No. 32 at 7-15), and Count II on the ground of preemption under *San Diego*

*Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959) ("*Garmon*") (Dkt. No. 32 at 16-19).  They

further move to dismiss Plaintiff's claims against Avangrid on the basis that Avangrid was not

Plaintiff's employer (Dkt. No. 32 at 19-20).  In opposition, Plaintiff argues that Defendants could

have raised their *Garmon* challenge and their challenge to Avangrid's inclusion as a defendant in

their first motion to dismiss and are not entitled to raise these issues in a second motion to

dismiss.  Plaintiff further argues that his remaining claims are not subject to preemption and that

his allegations that Avangrid, with Berkshire, was his employer are sufficient, at least at this

stage of the case (Dkt. No. 36 at 3-19).  The court begins by addressing the relatively

straightforward question of whether Section 301 preempts the claims in Count III, which

Plaintiff concedes Defendants are entitled to raise in view of the addendum to his complaint,

before turning to the more complex questions raised by Defendants in relation to Plaintiff's WPA

claim in Count II.

A.   Plaintiff's Remaining Breach of Contract Claims in Count III are Preempted.

"The well-pleaded complaint rule 'prohibits the exercise of federal question jurisdiction

if [, as is the case here,] no federal claim appears within the four corners of the complaint.'"

*Brawn v. Coleman*, 167 F. Supp. 2d 145, 148 (D. Mass. 2001) (quoting *BIW Deceived v. Local*

*S6*, 132 F.3d 824, 831 (1st Cir. 1997)).  Ordinarily, "a 'case may *not* be removed to federal court

on the basis of a federal defense, including the defense of preemption ….'"  *Id*. at 149 (quoting

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).  However, the doctrine of "complete

preemption" presents an exception to the well-pleaded complaint rule. *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). Pursuant to the doctrine, "[w]here a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded." *Id*. (citing *Metropolitan Life Ins. Co.  v. Taylor*, 481 U.S. 58, 63-64 (1987)). "The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." *Caterpillar*, 482 U.S. at 393. The preemptive force of §301 the LMRA is "so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,'" thereby subjecting it to removal to federal court. *Caterpillar*, 482 U.S. at 393 (quoting *Metropolitan Life Ins. Co.*, 481 U.S. at 65).

Here, so much as remains of Plaintiff's Count III raises state common law breach of contract claims. Plaintiff alleges that the terms and conditions of his employment "were governed by specific policies and procedures with respect to safety standards, reporting requirements, record keeping and quality assurance" in the CBA and that Defendants failed to comply with their obligations related to employee and public safety (Dkt. No. 30 at 1). "[A]n application of state [contract] law is pre-empted by § 301 … if such application requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *see also, e.g., Magerer v. John Sexton & Co.*, 912 F.2d 525, 528 (1st Cir. 1990) ("Section 301 completely preempts a state law claim, 'if the resolution of [the] state-law depends upon the meaning of a collective bargaining agreement.'" (alteration in original) (quoting *Lingle*, 486 U.S. at 405-06)). This is such a case. Resolving Plaintiff's remaining claims in Count III would require interpretation of the Safety and Health provisions in Article

7

XXIV of the CBA to determine what the CBA required of Defendants with respect to safety,

reporting requirements, and related obligations, whether they owed duties to their employees –

including Plaintiff – under those provisions, and whether Defendants complied with or violated

those provisions (Dkt. No. 32-1 at 14-16).[2]  While Plaintiff argues that his breach of contract

claims are independent of the CBA (Dkt. 36 at 13), he does not identify any other contractual

basis for his claims that Defendants failed to comply with an employment agreement he had with

them.  Moreover, this assertion is inconsistent with the addendum to the complaint which plainly

asserts that the CBA is the employment contract that is the premise for Plaintiff's breach of

contract claims (Dkt. No. 1-1 at ¶ 94; Dkt. No. 30).   "[Plaintiff] was an employee covered by a

collective bargaining agreement and, because [Plaintiff] has identified no other independent

contract that was breached, his breach of contract claim requires interpretation of the CBA."

*Fiumara v. President & Fellows of Harvard Coll.*, 526 F. Supp. 2d 150, 159 (D. Mass. 2007)

(citing *Magerer*, 727 F. Supp. at 749).

---

[2] In ruling on a motion to dismiss, "[o]rdinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).  Where, however, a plaintiff's claim depends on the contents of a document, and a plaintiff does not challenge the authenticity of the copy of the document supplied to the court, such a document "'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss."  *Id.* (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).  Plaintiff has represented that his remaining breach of contract claims are based on provisions of the CBA, and he has not disputed the authenticity of the copy of the CBA attached to Defendants' motion to dismiss (Dkt. No. 32-1).  Accordingly, the court may rely on the provisions of the CBA in ruling on Defendants' motion to dismiss.  *See Beddall*, 137 F.3d at 17 (holding that the district court properly considered an agreement on a Rule 12(b)(6) motion where the agreement was not attached to the complaint nor incorporated therein, but the complaint discussed it, the defendant appended it to its 12(b)(6) motion, and the plaintiff did not challenge its authenticity).

While Plaintiff asserts in his addendum to his original complaint that he "exhausted his remedies provided through the collective bargaining agreement's grievance and arbitration provisions" (Dkt. No. 30 at 1), neither the complaint nor the addendum can be read to assert a claim under Section 301 for breach of the CBA.  *See Ramírez-Lebrón v. Int'l Shipping Agency, Inc.*, 593 F.3d 124, 131 (1st Cir. 2010) (discussing elements of a Section 301 claim); *see also Takki v. Beth Israel Deaconess Hosp.-Plymouth, Inc*., No. CV 18-10099-FDS, 2018 WL 3912249, at *2 (D. Mass. Aug. 15, 2018).  To the contrary, the complaint asserts a common law claim for breach of contract and violation of the implied duty of good faith and fair dealing (Dkt. No. 1-1 at 10).  There is simply no mention of the LMRA or Section 301.

In any event, the CBA provides for a grievance procedure between Berkshire and the Union (Dkt. No. 32-1 at 6-7), and, if "no satisfactory adjustment of any grievance can be attained" under the grievance procedure, for arbitration of the grievance (Dkt. No. 32-1 at 9).  Under the CBA, an arbitration "shall be final and binding on [Berkshire] and the Union …." (Dkt. No. 32-1 at 9).  "In nearly every instance, '[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under [the finality provisions] of collective bargaining agreements.'"  *Ramírez-Lebrón*, 593 F.3d at 131 (alternations in original) (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).  The complaint plainly does not include any challenge to an arbitration award, nor does the complaint challenge the grievance or arbitration process.  *See id.*

For these reasons, Plaintiff's remaining claims in Count III are preempted by the LMRA and are subject to dismissal with prejudice.

B.  Plaintiff's WPA Claim in Count II is not Preempted by the LMRA

At the outset, the court rejects Plaintiff's contention that Defendants' second motion to dismiss his WPA claim is not properly before the court.  Defendants removed the case to this court on the ground that the case presented a federal question under Section 301 of the LMRA (Dkt. No. 1 at 2).  There is no question that removal on this basis was proper where the court, as set forth above, has found that Plaintiff's remaining breach of contract claims are based on provisions of the CBA and are, therefore, preempted by the LMRA.  *See Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 62 (1st Cir. 2021) (holding that LMRA preemption of a state law claim gave rise to federal question jurisdiction).  If the LMRA does not preempt Plaintiff's remaining WPA claim, it follows that the WPA claim is a state law claim pending in federal court as a result of the exercise of supplemental jurisdiction.  *See Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017); 28 U.S.C. § 1367.  The court is required to consider whether to retain supplemental jurisdiction over the WPA claim to the extent it is not preempted when doing so might constitute an abuse of discretion.  *See Wilber*, 872 F.3d at 23.  In these circumstances, the court exercises its discretion to consider all the contentions advanced in Defendants' second motion to dismiss. Accordingly, the court turns to the preemption contentions raised by Defendants in response to Plaintiff's WPA claim.

"LMRA complete preemption has broad application in employment-related matters." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 18 (1st Cir. 2018) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985); *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012)).  "Even so, LMRA complete preemption has its limits."  *Id.*  "[S]ection 301 does not 'preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'"  *Id.* (quoting *Lueck*, 471 U.S. at 212).  "In the last analysis,

10

state-law claims that require 'only consultation with the CBA,' as opposed to 'actual interpretation' of the CBA, 'should not be extinguished.'" *Id.* (quoting *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001); citing *Cavallaro*, 678 F.3d at 7).

Defendants contend that Count II is subject to § 301 preemption because Plaintiff's WPA claim would require interpretation of the CBA, but they have not shown why this would be necessary. Defendants point to paragraphs in the complaint they assert would require interpretation of the CBA (Dkt. 32 at 13). The events described in those paragraphs, however, contain Plaintiff's allegations about the many complaints he raised about safety lapses, his communications with supervisors and management about these alleged safety lapses, and the responses – or lack thereof – that he received (Dkt. 1-1 at ¶¶ 8, 9, 11, 13, 14, 19, 27, 28, 37, 38, 58, 59, 66, 68, 69, 73, 74, 80). Plaintiff relies on these alleged events as a basis for his claim that Defendants retaliated against him in violation of the WPA for raising concerns about risks to the health and safety of himself, other employees, and the public, not as a basis for any contention related to the terms of the CBA, nor would Plaintiff have to show that one or more of his safety complaints alleged a violation of the CBA health and safety provisions to prevail on his WPA claim (Dkt. 1-1 at ¶ 90).

The Supreme Court has said on the question of preemption that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees under state law, and … it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement, … (and not whether a grievance arising from 'precisely the same set of facts' could be pursued …) that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (footnote omitted) (citations omitted). *Cf. Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 266 (1994) (holding that the petitioner's claim under the

11

Hawaii Whistleblower Protection Act was not preempted by the Railway Labor Relations Act based on application of the *Lingle* framework because it would require only a purely factual inquiry into the employer's retaliatory motive). The WPA prohibits an employer from "'tak[ing] any retaliatory actions," including "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment," because the employee has engaged in certain protected activities. Mass. Gen. Laws ch. 149, §§ 185(a)(5), (b). Included among those protected activities is "[o]bject[ing] to, or refus[ing] to participate in any activity, policy or practice which the employee reasonably believes … poses a risk to public health, safety or the environment." Mass. Gen. Laws ch. 149, § 185(b)(3). The elements of a whistleblower claim under the statute are that "(1) the plaintiff-employee engaged in an activity protected by the act; (2) the protected activity was the cause of an adverse employment action, such that the employment action was retaliatory; and (3) the retaliatory action caused the plaintiff damages." *Edwards v. Commonwealth*, 174 N.E.3d 1153, 1166 (Mass. 2021) (string cite omitted). The employee activities protected by the WPA are independent of any of Defendants' undertakings in the CBA. The WPA's prohibition of retaliation against an employee for protesting a policy or practice that the employee reasonably believes endangers public health or safety is a statutory right conferred on employees in Massachusetts independent of any rights the employee would have under a collective bargaining agreement. *Livadas* and the cases on which it relies teach that claims predicated on the independent employee rights protected by the WPA are not preempted by Section 301. *Id*., 512 U.S. at 124-25.

The court finds the holding in the case of *Bishop v. Bell Atl. Corp.*, 81 F. Supp. 2d 84 (D. Me. 1999), that the plaintiff's Maine Whistleblowers' Act claim was preempted by Section 301,

*id*. at 88-89, unpersuasive in view of the carefully defined limits on preemption recognized by the United States Court of Appeals for the First Circuit and the Supreme Court. As Plaintiff points out, other courts have reached different conclusions than the *Bishop* court on the issue of Section 301 preemption of state whistleblower protection claims. For example, in *Schroeder v. Crowley Maritime Corp.*, 825 F. Supp. 1007 (S.D. Fla. 1993), the plaintiff claimed "that his employment was terminated because he refused to violate the Federal Motor Carrier Act Safety Regulations by driving an unsafe vehicle." *Id.* at 1007. The defendant-employer moved for dismissal or summary judgment on the plaintiff's state whistleblower claim on LMRA preemption grounds, arguing that deciding the claim would require interpretation of the collective bargaining agreement between it and the union of which the plaintiff was a member. *Id.* at 1007-08. The court denied the motion, holding that "the plaintiff's right exists independently of the collective bargaining agreement," and that, to determine whether the plaintiff was entitled to relief, the court would only need to "determine whether he was terminated in retaliation for his refusal to disobey the law." *Id.* at 1009. The court observed that the plaintiff was not attempting to circumvent the requirements of Section 301. Rather, he was bringing a statutory claim that granted him a right that was not available under the collective bargaining agreement. *Id.* at 1010. *See also Rosen v. Transx Ltd.*, 816 F. Supp. 1364, 1371 (D. Minn. 1993) (holding that the plaintiff's claim under the Minnesota whistleblower statute was not preempted by Section 301 because "[a]nalysis of the factors needed to establish a claim for retaliatory discharge under [the statute] only requires analysis of factual questions and requires no analysis of any provisions or terms of the [collective bargaining] agreement"). Here, too, in Plaintiff's whistleblower claim, he is asserting a right granted to him under state law that is

separate and apart from the provisions of the CBA and that was not negotiated between the parties to the CBA.

Cases involving the Massachusetts Workers' Compensation Act, Mass. Gen. Laws ch. 152, § 75B ("Section 75B"), on which Defendants rely, are inapposite.  Section 75B provides that "[i]n the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail.  An employee may not otherwise waive rights granted by this section."  Mass. Gen. Laws ch. 152, § 75B(3).  By the plain terms of Section 75B, if a worker covered by a collective bargaining agreement files suit seeking to recover statutory workers' compensation benefits, the court must review and interpret the terms of the collective bargaining agreement to see whether the employee's rights under the statute are inconsistent with the terms of the collective bargaining agreement.  This statutory provision simply recognizes the inevitable.  The court expects that it would be the rare collective bargaining agreement that did not address the rights of an employee and of management when an employee claims to have been injured on the job and, as a result, unable to work.  Indeed, while the complete CBA is not attached to Defendants' memorandum in support of its motion to dismiss, the table of contents, which is attached, addresses sick time management, sick pay, partial pay for injuries in the course of employment, maternity, and long-term disability in Articles IV and V (Dkt. No. 32-1 at 3).  In addition, it is also possible that the provision addressing interruption of service affecting seniority in Article VII addresses an absence attributable to an injury on the job (Dkt. No. 32-1 at 3).  Any claim for workers' compensation benefits brought by an employee covered by a CBA would almost certainly require interpretation of the CBA.  There is no comparable language in the WPA subordinating the protections it confers to the terms of a collective bargaining agreement, and Defendants have not identified any

provision in the CBA that might implicate the state law right that Plaintiff asserts in Count II.

Plaintiff's WPA claim is a "nonnegotiable right[] conferred … as a matter of state law, …

'independent' of rights under the collective bargaining agreement," which the LMRA does not

preempt.  *Livadas*, 512 U.S. at 123 (footnote omitted) (citations omitted).  *See CoClough v. Akal*

*Sec., Inc.*, 303 F. Supp. 3d 123, 135 (D.D.C. 2018) (declining to dismiss the plaintiff's state law

whistleblower claim that "neither pertain[ed] to a right created by the CBA itself nor call[ed] for

analysis of the CBA"); *see also Carlson v. Arrowhead Concrete Works, Inc.*, 375 F. Supp. 2d

835, 842 (D. Minn. 2005) (holding that the plaintiff's state law whistleblower claim was not

preempted where the plaintiff claimed he had not been recalled to work because of his

whistleblowing activities, which included refusing to drive a truck he claimed was unsafe,

because it "require[d] an analysis of factual questions pertaining to [the plaintiff's] conduct and

[the defendant's] conduct and motivation and no analysis of the provisions or terms of the

[CBA]").

      C.     <u>Plaintiff's WPA Claim Will be Remanded to State Court</u>

     Defendants argue that Plaintiff's WPA claims are preempted by *Garmon* and must be

dismissed for this reason.  "The Supreme Court held in *Garmon* that when an activity is arguably

subject to § 7 or § 8 of the National Labor Relations Act, the states as well as the federal courts

must defer to the exclusive competence of the NLRB if the danger of state interference with

national labor policy is to be averted."  *Chaulk Servs., Inc. v. Mass. Comm'n Against*

*Discrimination*, 70 F.3d 1361, 1364 (1st Cir. 1995) (citing *Garmon*, 359 U.S. at 245).  "[U]nder

*Garmon*, states have no authority to regulate conduct that is arguably protected under § 7 or

arguably prohibited under § 8 of the National Labor Relations Act (NLRA)."  *Local Union No.*

*12004, United Steelworkers of Am. v. Mass.*, 377 F.3d 64, 70 (1st Cir. 2004).  If a claim is

preempted under *Garmon*, the NLRB has jurisdiction; federal and state courts do not.  *See Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1401 (9th Cir. 1988).

However, "a party may not *remove* an action brought in state court simply because a *Garmon* defense is asserted.  When such a defense is raised in state court, the state court must resolve it."  *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994).  Because Plaintiff's breach of contract claims are completely preempted by Section 301, Defendants properly removed this case to the federal district court.  Now, however, Count II, the sole remaining claim, is a state law claim possibly subject to *Garmon* preemption, a defense that does not provide an independent basis for federal question jurisdiction.  *See, e.g., Am. Fed'n of State, County, & Municipal Emps., Council 93 v. Gordon*, 505 F. Supp. 2d 183, 191 (D. Mass. 2007) (remanding the plaintiffs' state law claims that were not subject to complete preemption by § 301 of the LMRA because the "potential for federal preemption [by the NLRA was] not sufficient to confer removal jurisdiction").  *Garmon* preemption is an issue that a state court has jurisdiction to decide.  *See Bud Antle*, 45 F.3d at 1270; *Am. Fed'n of State, County & Municipal Emps.*, 505 F. Supp. 2d at 191; *see also Zell v. Ricci*, 957 F.3d 1, 15 (1st Cir. 2020) (noting that, "'when all federal claims have been dismissed [at the motion to dismiss stage], it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims unless doing so would serve "the interests of fairness, judicial economy, convenience, and comity"'" (quoting *Wilber*, 872 F.3d at 23)).  "It is important to emphasize that this [c]ourt's ruling on the existence of [federal question] jurisdiction does not reflect in any way on the merits of a federal preemption defense and does not prejudice … Defendants' ability to raise their [*Garmon*] preemption defense[ ] in state court."  *Brawn*, 16 7 F. Supp. 2d at 154.  If the state court determines that the NLRB is the proper and exclusive forum for adjudication of the rights

Plaintiff has asserted under the WPA, "it may dismiss the matter as preempted by federal law." *Am. Fed'n of State, County & Municipal Emps.*, 505 F. Supp. 2d at 191. [3]

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with prejudice as to Count III, insofar as it is subject to complete preemption by § 301 of the LMRA. Defendants' motion to dismiss is DENIED as to Count II where there is no complete preemption. However, the court declines to exercise supplemental jurisdiction over this sole remaining state law claim, and the Clerk's Office is directed to remand this case to the Massachusetts Superior Court and close it on this court's docket.

DATED:  December 14, 2023                     /s/ Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             United States Magistrate Judge

---

[3] The court declines to rule on the question of whether Avangrid is an employer of Plaintiff prior to remand.

17